UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JESSE ROY SIMPSON, <br><br> Plaintiff, <br><br> vs. <br><br> DENNIS KAEMINGK, SECRETARY OF CORRECTIONS, STATE OF SOUTH DAKOTA, INDIVIDUAL AND OFFICIAL CAPACITIES; BRENT FLUKE, HEAD WARDEN, MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITIES; ALEJANDRO REYES, ASSOCIATE WARDEN, MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITIES; JOSH KLIMEK, UNIT MANAGER, MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITIES; MISSY TOLSMA-HANVEY, NURSE, DOC AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITIES; MEL WALINGA, PHYSICIAN, DOC, MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITIES; DENISE BARDWELL, NURSE, DOC AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITIES; CBM FOOD SERVICES, UNKNOWN DEPARTMENT OF CORRECTIONS EMPLOYEES, MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITIES; UNKNOWN DEPARTMENT OF HEALTH CORRECTIONS EMPLOYEES, MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITIES; AND UNKNOWN CBM FOOD SERVICES EMPLOYEES, MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITIES; | 4:18-CV-04133-LLP <br><br><br> ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND § 1915(A) SCREENING |

|          Defendants.          |   |
|-------------------------------|---|
|                               |   |

Plaintiff, Jesse Roy Simpson, is an inmate at the South Dakota State Penitentiary, in Sioux Falls, South Dakota. When these claims were raised, Simpson was a inmate at the Mike Durfee State Prison ("MDSP") in Springfield, South Dakota. Docket 1 at 1. Simpson filed a pro se lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of the Eighth Amendment, Fourteenth Amendment, and the Americans with Disabilities Act ("ADA"). *Id.* Simpson filed a motion to proceed in forma pauperis on October 16, 2018. Docket 3. This order shall address Simpson's motion to proceed in forma pauperis as well as an initial screening of his complaint.

## MOTION TO PROCEED IN FORMA PAUPERIS

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. ' 1915(b)(1). The court may, however, accept partial payment of the initial filing fee where appropriate. Therefore, " '[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceedings or over a period of time under an installment plan.' " *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. ' 1915(b)(1), which requires a payment of 20 percent of the greater of:

(A) the average monthly deposits to the prisoner's account; or
(B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

2

Simpson filed a prisoner trust account and the account shows his current balance as "negative [$]48.36" because, Simpson owes money, the initial partial filing fee is waived. Docket 4 at 1. Based on this information, the Court grants Simpson leave to proceed in forma pauperis and waives his initial partial filing fee.

In order to pay his filing fee, Simpson must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. ' 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the Court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. ' 1915(b)(2). The installments will be collected pursuant to this procedure.

The clerk of the court will send a copy of this order to the appropriate financial official at plaintiff's institution. Simpson will remain responsible for the entire filing fee, as long as he is a prisoner, even if the case is dismissed at some later time. *See In re Tyler*, 110 F.3d 528, 529-30 (8th Cir. 1997).

## FACTUAL BACKGROUND

According to his complaint, Simpson was diagnosed with Diabetes Mellitus, Type 1, in 1997 and has been insulin dependant since then. Docket 1 at 3. A1C blood levels indicate "the stability and progress of his disease" and before incarceration his A1C level remained stable at 8.0. *Id.* Since being incarcerated, Simpson alleges that his levels have been at 10.1 and as high as 11.7 within the last 90 days. *Id.* Simpson contends that elevated A1C levels indicate "damage to

3

the patient's nervous system, cardiovascular systems, and immune system . . . increasing the risk of further complications of the disease, such as neuropathy, heart attack, or strokes." *Id.*

**DIET**

Simpsons asserts that the rise in the blood levels is the direct result of the diet provided by CBM Food Services. *Id.* Furthermore, Simpson claims there is no diabetic diet provided for by the correction facility. *Id.* Simpson cites the *Food Service Review* report by Barbara Warren, National Commission on Correctional Health Care. *Id.* Simpson claims that the *Food Service Review* found that the food provided by CBM Food Services is based on starches and sodium with low levels of protein and few vegetables and fruit. *Id.* Furthermore, Simpson alleges that there are no alternative foods or meals that are available to individuals with diabetes. *Id.* at 4.

**CARE**

Simpson alleges that during an incident when he had low blood sugar at 3:00 am and a nurse was called. *Id.* Simpson contends that the Nurse, Denise Bardwell, responded to this "medical crises" as "wasting her time" and threatened to file a disciplinary action against Simpson. *Id.* at 4.

**REFUSAL OF NEW SHOES**

Simpson claims he has been unable to receive new shoes and is forced to walk around with "holes in his shoes and open sores on his feet." Simpson alleges that the standard shoe provided by the Department of Corrections ("DOC") are "rubber soled socks with support" and after an inmate goes through four pairs in one year, the DOC charges $10.00 for additional shoes. *Id.* Simpson argues that he has been to sick call to talk with nurses, including Missy Tolsma-Hanvey, several times about the open sores on his feet. He claims he goes to the sick call regarding his "insulin mis-dosage, but nurses refuse to schedule him to see Dr. Walinga." *Id.*

Simpson has "been told that there have been many inmates with diabetes who have suffered amputations as a result of sores" and allegedly Health Services refuses to treat. *Id.* at 4-5. Simpson claims that "diabetics are apparently simply another inconvenience involved in prison administration." *Id.* at 5. Simpson has requested proper footwear to protect his feet from further deterioration and Unit Manager Josh Klimek ("Klimek"). Simpson claims Klimek is in charge of assessing the need for diabetic footwear and asserts that Klimek is not a medical doctor. *Id.* Simpson claims that Klimek has refused to order him diabetic footwear. *Id.*

## BLOOD SUGAR CHECKS AND RECREATION

Simpson alleges that blood sugar checks are held at 10:15 am everyday and that one must eat shortly after taking insulin, so they don't go into shock. *Id.* Simpson argues that the blood sugar checks conflict with the weekday recreation time for his unit which is held at 10:00 am. *Id.* When Simpson told Klimek about the conflicting times, Klimek allegedly responded that "he can go to rec at another time or simply skip blood sugar checks." *Id.* Simpson claims that he cannot follow that plan because exercise is a natural way to control his blood sugar levels but he can not skip the blood sugar check. *Id.* Simpson argues that this places a significant barrier on his ability to exercise and he has filed an ADA accommodation request with Associate Warden Reyes ("Reyes") but it has not been answered. *Id*

## UNSANITARY CONDITIONS

Simpson is housed in West Crawford hall and claims that there is no ventilation to circulate fresh air into the rooms *Id.* at 5-6. Simpson claims that the circulation is especially an issue in the bathrooms which were designed for 40 students per floor but has been serving 70 inmates for thirty years. *Id.* at 6. Simpson alleges there are three shower heads in a small room and due to constant water and humidity the paint is peeling, plaster has fallen from the wall, and

mold/mildew grow on most surfaces. *Id.* Condensation drips on the toilets and dampens the toilet paper and the user. *Id.*

Simpson alleges that there have been several clogged drain incidents, with the most recent occurring on September 4, 2018. *Id.* "As of this date, more than six weeks later, there are still feces, toilet paper, and urine in the basements from the overflow which has not been cleaned up. Simpson claims that inmates are required to walk through this sewage to store and retrieve supplies form the basement storage area." *Id.* Simpson alleges that these conditions aggravate his respiratory issues and after he spoke to Klimek about the smell Klimek allegedly responded with " '[i]f you don't like it, don't come to prison.' " *Id.*

Simpson claims that Klimek and other staff have refused to give Simpson grievance forms to address the failure of sewage cleanup because " 'it's the inmates' fault this keeps happening.' " *Id.* Furthermore, Simpson alleges that because of the smell the officers keep the building doors open and the hallways become as low as the mid-40s. *Id.* "In warmer weather, it was not unknown for vermin, such as mice, bats, gophers, and feral cats to run freely through the halls in pursuit of swarming insects. *Id.* at 7.

**LAUNDRY SERVICES**

Simpson claims laundry services are insufficient for the inmates in population. *Id.* at 7. "Laundry is returned damp, still dirty, and sometimes smells worse than when it was submitted." *Id.* Simpson alleges that when someone complains about this failure the Laundry Supervisor Hewitt instructs inmates to turn in less clothing. Additionally, Simpson claims it is prison policy to reissue used clothing that have urine and feces stains. "Instead of improving laundry service or providing fresh underwear, the prison changed from white boxers to brown so the stains would not be visible." *Id.*

6

Lastly, Simpsons claims that his "[c]omplaints to Warden Brent Fluke [("Fluke")] about medical issues, rec, the diet, and [] Klimek's refusals are ignored." *Id.* Simpson alleges that Klimek knows of all of the conditions and refuses to correct them and Klimek "has no medical training and does not consult with any medical staff regarding these issues." *Id.* at 8.

## LEGAL STANDARD

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Bell Atlantic* requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl.*, 550 U.S. at 555; *see also Abdullah v. Minnesota*, 261 Fed. Appx. 926, 927 (8th Cir. 2008) (citing *Bell Atlantic* noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they are "(1) frivolous, malicious,

or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). Simpson alleges violations of the United States Constitution as well as the ADA. The Court will now assess each individual claim under 28 U.S.C. § 1915A.

## DISCUSSION

### I. Injunctive Relief Requests are Moot

Simpson asks for the Court to render a temporary and permanent injunction requiring: 1) federal funding to be withheld from the DOC unless they comply with the ADA; 2) "the defendants to provide . . . a diet appropriate to {Simpson's] medical needs"; 3) "the defendants [] provide . . . the opportunity to attend rec . . . without foregoing . . . blood sugar checks;" and 4) "the defendants to provide . . . appropriate footwear at least one a year." *See* Docket 1 at ¶ 49-53.

When Simpson filed his complaint, he was an inmate at the Mike Durfee State Prison in Springfield, South Dakota. At some point, Simpson was transferred and is now an inmate at the South Dakota State Penitentiary in Sioux Falls, South Dakota. A case is moot when circumstances change and "a federal court can no longer grant effective relief." *Beck v. Mo. State High Sch. Activities. Ass'n*, 18 F.2d 604, 605 (8th Cir. 1994). In *Martin v. Sargent*, the Eighth Circuit held that a prisoner's claim for injunctive relief against a warden became moot when the prisoner was transferred to another prison. 780 F.2d 1334, 1337 (8th Cir. 1985) (Although the Court ruled that Martin's injunctive relief claims were moot, they noted that he retained standing to bring the claims for monetary damages.). Therefore, the claims which this Court addresses below are claims in which Simpson is asking for monetary damages. Simpson's claims for injunctive relief are moot because he has been transferred and is no longer subject to the conditions he was requesting relief from. *See* Docket 1 at ¶ 49-53.

## II. Eighth Amendment Claims

Simpson claims that the defendants have violated his Eighth Amendment rights by failing to provide adequate medical care and being indifferent to his medical needs as a diabetic inmate. "[A] prison official who is deliberately indifferent to the medical needs of a prisoner violates the prisoner's constitutional rights." *Letterman v. Does*, 789 F.3d 856, 861 (8th Cir. 2015). The deliberate indifference element of this claim "has two components: an actor must 'know[] of and disregard[] an excessive risk to inmate health or safety.'" *Id.* at 862 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009) (The court will look at the actor's subjective knowledge.).

A court can infer knowledge of the risk if the risk was obvious. *See Farmer*, 511 U.S. at 842-43. "It is sufficient to show that 'the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it.'" *Letterman*, 789 F.3d at 863; quoting *Farmer*, 511 U.S. at 842. An actor can manifest deliberate indifference by " 'intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed.' " *Krout*, 583 F.3d at 567 (quoting *Pietrafeso v. Lawrence Cnty.*, 452 F.3d 978, 983 (8th Cir. 2006)). Further, "the obvious inadequacy of a response to a risk may support an inference that the officer recognized the inappropriateness of his conduct." *Id.*

Therefore, in order to survive 28 U.S.C. § 1915A review, Simpson must show: (1) "he suffered objectively serious medical needs" and (2) that the defendants "actually knew of but deliberately disregarded those needs." *Johnson v. Hamilton*, 452 F.3d 967, 972-73 (8th Cir. 2006); *see also Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002) (noting that deliberate indifference requires proof of reckless or callus disregard of a known, excessive risk of harm to

9

the safety of the inmate. Negligence by itself does not give rise to an appropriate § 1983 claim. *See Daniels v. Williams*, 474 U.S. 327, 332-36 (1986).

Simpson makes several claims that the defendants were deliberately indifferent to accommodate his diabetic needs and therefore violated his Eighth Amendment rights. The Court will address them with the deliberate indifference test stated above.

### A. Refusal of New Shoes

Simpson alleges that Kaemingk, Fluke, Reyes, Klimek, and Unknown Department of Corrections ("DOC") employees have violated or conspired to violate his Eighth and Fourteenth Amendment rights by refusing to provide suitable shoes. Docket 1 at 8.

Simpson claims he has been unable to receive new shoes and is forced to walk around with "holes in his shoes and open sores on his feet." *Id.* Simpson argues that he has been to sick call with Nurse Missy Tolsma-Hanvey. *Id.* Simpson claims he has requested proper footwear to protect his feet from further deterioration and Klimek has refused to order Simpson the footwear. *Id.* Furthermore, Simpson claims he has sent complaints to Fluke but the complaints have gone unanswered. *Id.* Simpson's claim against Klimek, Fluke, and Missy Tolsma-Hanvey for refusing to provide suitable shoes survives review under 28 U.S.C. § 1915A review. Simpson's claims against Kaemingk, Reyes, and Unknown DOC Employees are dismissed because Simpson has failed to state a claim under § 1915A review.

### B. Refusal to Accommodate Blood Sugar Checks and Recreation Schedule

Simpson alleges that Kaemingk, Fluke, Reyes, Klimek, and Unknown DOC Employees have "violated or conspired to violate the Eighth and Fourteenth Amendment rights of the [p]laintiff through the promulgation of policies which endanger his life and health, including refusing to accommodate his blood sugar checks and rec schedule." *Id.* at 8.

10

Simpson alleges that blood sugar checks are held at 10:15 am everyday and weekday recreation for his unit is held at 10:00 am. *Id.* When Simpson told Klimek about the conflicting times, Klimek allegedly responded that "he can go to rec at another time or simply skip blood sugar checks." *Id.* Simpson claims that Fluke has received complaints about this issue as well. *Id.* at 7. Further, Simpson argues that this places a significant barrier on his ability to exercise and he has filed a request with Reyes but it has not been answered. *Id.* Simpson's claims against Kaemingk, Fluke, Reyes, Klimek, and Unknown DOC Employees and refusing to accommodate blood sugar checks and the rec schedule survive 28 U.S.C. §1915A review.

### C. Non-Compliance with a Diabetic Diet and Refusal to Provide Suitable Medical Care

Simpson claims that Kaemingk, Fluke, Unknown DOC Employees, CBM Food Services, Unknown Department of Health Corrections Employees, Unknown CBM Food Services Employees have violated his Eighth Amendment because the diet provided "does not comply with standard dietary guidelines to diabetic and otherwise healthy prisoners . . . despite the scathing report by Barbara Warren." *Id.* at 4.

Simpson alleges that his A1C levels have been higher while incarcerated. *Id.* at 3. Simpsons asserts that the rise in the blood levels is the direct result of the diet provided by CBM Food Services. *Id.* Simpson also alleges there is no diabetic diet provided for by the correction facility. *Id.* at 4. Simpson cites the *Food Service Review* report by Barbara Warren, National Commission on Correctional Health Care). *Id.* Simpson claims the *Food Service Review* found that the food provided by CBM Food Services is based on starches and sodium with low levels of protein and few vegetables and fruit. *Id.* Furthermore, Simpson alleges that there are no alternative foods or meals that are available to individuals with diabetes. *Id.*

11

The Due Process Clause of the Fourteenth Amendment and the Eighth Amendment's prohibition against cruel and unusual punishment require prisoners to be provided with nutritionally adequate meals to maintain health. *See e.g., Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir.1996); *Campbell v. Cauthron*, 623 F.2d 503, 508 (8th Cir. 1980). "Merely because the food is not prepared to an inmate's taste or the fact that an inmate would prefer other foods does not implicate the Constitution. Rather, the Constitution is only violated if the food provided is inadequate to maintain good health." *Jones v. Allen*, 2007 WL 2725218, *4 (W.D. Ark. September 18, 2007) (citing *Burgin v. Nix*, 899 F.2d 733, 734-35 (8th Cir. 1990); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Additionally, food must be "prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Ramos v. Lamm*, 639 F.2d 559, 570-71 (10th Cir. 1980).

Here, Simpson contends that CBM food does not serve food nutritionally adequate to maintain his health as an individual who has diabetes. In fact, Simpson asserts that his rise in A1C blood levels is the direct cause from the diet provided. Simpson claims that Fluke has received complaints from him about the diet but his complains have been ignored. *Id.* at 7. Simpson claims that he has suffered medically from the diet, however, he has failed to allege facts that assert that certain defendants knew of his medical diet needs and were deliberately indifferent to his needs. Thus, Simpson's claim against Fluke survives 28 U.S.C. § 1915A review because Simpson claims that Fluke received complaints from him about the diet. *Id.* at 7. However, his claims against Kaemingk, Unknown DOC Employees, CBM Food Services, Unknown Department of Health Corrections Employees, Unknown CBM Food Services Employees have failed 28 U.S.C. § 1915A.

**D. Refusal to Provide Medical Care Suitable to a Diabetic**

Simpson claims that Nurses, Missy Tolsma-Hanvey and Denise Bardwell, Doctor Mel Walinga, and Unknown Department of Health Corrections Employees have violated his Eighth Amendment rights for "refusal to provide medical care suitable to a diabetic and protect him from the known effects of this condition." *Id.* at 8-9. Simpson claims that he had an incident with low blood sugar at 3:00 am and the guards had to call Nurse Denise Bardwell. *Id.* at 4. Simpson contends that Bardwell responded to this "medical crises" as "wasting her time" and threatened to file a disciplinary action against Simpson. *Id.* at 4. Simpson argues that he has been to sick call to talk with nurses, including Missy Tolsma-Hanvey, several times about the open sores on his feet. He claims he goes to the sick call regarding his "insulin mis-dosage, but nurses refuse to schedule him to see Dr. Walinga." *Id.* Simpson has "been told that there have been many inmates with diabetes who have suffered. Simpson's claim against Nurse Missy Tolsma-Hanvey survives 28 U.S.C. § 1915A review as denying access to medical care may arise to deliberate indifference to Simpson's diabetic needs.

Simpson's claims against Dr. Walinga and Unknown Department of Health Corrections Employees fail because there are no facts alleged that Dr. Walinga or the Unknown Employees knew of his medical condition or acted indifferent to it. Furthermore, Simpson's claim against Bardwell does not survive 28 U.S.C. § 1915A review as the conduct asserted does not state a claim for deliberate indifference.

**E. Refusal to Maintain and Safe and Sanitary Facility**

**a. Unsanitary Facility**

Simpson claims that Kaemingk, Fluke, Reyes, Klimek, and Unknown DOC Employees have violated or conspired to violate the Eighth and Fourteenth Amendment rights through their "fail[ure] to maintain a safe and sanitary facility." *Id.* at 8.

13

Simpson claims that the circulation is poor in the bathrooms which were designed for 40 students per floor but has been serving 70 inmates for thirty years. *Id.* at 6. Simpson alleges there are three shower heads in a small room and due to constant water and humidity the paint is peeling, plaster has fallen from the wall, and mold/mildew grow on most surfaces. *Id.* Condensation drips on the toilets and dampens the toilet paper and the user. *Id.* Simpson alleges that there have been several clogged drain incidents, with the most recent occurring on September 4, 2018. *Id.* Inmates are required to walk through this sewage to store and retrieve supplies form the basement storage area." *Id.*

Simpson claims that this aggravated his respiratory issues. *Id.* Simpson brought up the issue and Klimek allegedly responded " '[i]f you don't like it, don't come to prison.' " *Id.* Simpson claims that Klimek and other staff have refused to give Simpson grievance forms to address the failure of sewage cleanup because " 'it's the inmates' fault this keeps happening.' " *Id.* Furthermore, Simpson alleges that because of the smell the officers keep the building doors open and the hallways become as low as the mid-40s. *Id.* "In warmer weather, it was not unknown for vermin, such as mice, bats, gophers, and feral cats to run freely through the halls in pursuit of swarming insects. *Id.* at 7.

"[R]easonably adequate sanitation and the ability to eliminate and dispose of one's bodily wastes without unreasonably risking contamination are basic identifiable human needs of a prisoner protected by the Eighth Amendment[.]" *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 958 (8th Cir. 1994). In *Patchette v. Nix*, the Eighth Circuit Court of Appeals held that a prison facility which had one toilet for every twenty-four inmates did not violate the Eighth Amendment. 952 F.2d 158, 164 (8th Cir. 1991). Liberally construing the factual allegations, Simpson's claim as to unsanitary

14

conditions at MDSP against Kaemingk, Fluke, Klimek, and Unknown DOC Employees survives initial review under 28 U.S.C. § 1915A.

### b. Unsanitary Laundry

Simpson claims that Kaemingk, Fluke, Reyes, Klimek, and Unknown DOC Employees are violating his Eighth Amendment rights because the laundry services are insufficient for the inmates in population. *Id.* at 7. Simpson claims that the "[l]aundry is returned damp, still dirty, and sometimes smells worse than when it was submitted." *Id.* Simpson alleges that when someone complains about this failure the Laundry Supervisor Hewitt instructs inmates to turn in less clothing. Additionally, Simpson claims it is prison policy to reissue used clothing that have urine and feces stains. "Instead of improving laundry service or providing fresh underwear, the prison changed from white boxers to brown so the stains would not be visible." *Id.*

Prisoners are entitled to clean clothing. *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989); *see also Divers v. Dep't of Corr.*, 921 F.2d 191, 194 (8th Cir. 1990) (noting inmates are "entitled to adequate laundry facilities" and "cleaning supplies"); *Shannon v. Graves*, 257 F.3d 1164, 1169 (10th Cir. 2001) (finding allegations of fecal contamination on clothing an Eighth Amendment claim). Liberally construing the factual allegations, Simpson has stated a claim of unsanitary conditions due to insufficient laundry services against Kaemingk, Fluke, Reyes, Klimek, and Unknown DOC employees.

### III. Americans with Disabilities Act

Simpsons raises many claims under the ADA. He claims that Kaemingk, Fluke, Reyes, Klimek, Dr. Walinga, Nurses Tolsma-Hanvey and Bardwelll, Unknown Department of Health Corrections, and Unknown DOC Employees refused to provide requested accommodations of: 1)

footwear; 2) clothing; 3) access to the rec; 4) a nutritious diet suitable for diabetics; and 5) have failed to provide a sanitary environment.

"The ADA consists of three titles addressing discrimination against the disabled in different contexts." *Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998). "Title I prohibits employment discrimination, Title II prohibits discrimination in the services of public entities, and Title III prohibits discrimination by public accommodations involved in interstate commerce such as hotels, restaurants, and privately operated transportation services[.]" *Id.* (citing 42 U.S.C. §§ 12112, 12132, 12182, 12184). Simpson does not raise which Title of the ADA is being violated, however by liberally construing his complaint it is clear that Simpson alleges violations of Title II.

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 886 (8th Cir. 2009). In order to sufficiently allege that defendants violated Title II of the ADA, Simpson must allege:

> (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the [prison's] services, programs, or activities, or was otherwise subjected to discrimination by the [prison]; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability.

*Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010).

Simpson claims he is a qualified individual with a disability due to his diabetes and that he is being denied services (recreation time, new shoes, diet) due to his disability. Thus, Simpson's Title II claim survives initial screening.

Accordingly, it is ORDERED

16

1. Plaintiff's motion for leave to proceed in forma pauperis (Docket 3) is granted and his initial filing fee is waived.
2. The institution having custody of Simpson is directed that whenever the amount in Simpson's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to the Simpson's trust account shall be forwarded to the U.S. District Court Clerk's Office under to 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid in full.
3. Simpson's claims for injunctive relief are moot. (Docket 1 at ¶ 49-53).
4. Simpson's claim against Klimek, Fluke, and Nurse, Missy Tolsma-Hanvey for refusing to provide suitable shoes survives review under 28 U.S.C. § 1915A review.
5. Simpson's claims against Kaemingk, Reyes, and Unknown DOC Employees for refusing to provide suitable shoes are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).
6. Simpson claims against Kaemingk, Fluke, Reyes, Klimek, and Unknown DOC Employees and refusing to accommodate blood sugar checks and the rec schedule survives 28 U.S.C. § 1915A review.
7. Simpson's claim of inadequate diet for a diabetic against Fluke survives 28 U.S.C. §1915 A review.
8. Simpson's claims against Kaemingk, Unknown DOC Employees, CBM Food Services, Unknown Department of Health Corrections Employees, Unknown CBM Food Services Employees do not survive initial review.

17

9. Simpson's claim against Nurse Missy Tolsma-Hanvey for denying access to medical care survives 28 U.S.C. § 1915A review.

10. Simpson's claims against Dr. Walinga and Unknown Department of Health Corrections Employees for denying adequate medical care are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

11. Simpson's claim against Nurse Bardwell for failure to provide adequate medical care is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

12. Simpson's claim as to unsanitary conditions of the MDSP facility against Kaemingk, Fluke, Klimek, and Unknown DOC Employees survives initial review under 28 U.S.C. § 1915A.

13. Simpson's claim of unsanitary conditions regarding inadequate laundry services against Kaemingk, Fluke, Reyes, Klimek, and Unknown DOC Employees survives initial review under 28 U.S.C. § 1915A.

14. Simpson's ADA Title II claims against Kaemingk, Fluke, Reyes, Klimek, Dr. Walinga, Tolsma-Hanvey, Bardwell, Unknown Department of Health Corrections, and Unknown DOC Employees survive initial screening under 28 U.S.C. § 1915A.

15. The Clerk shall send blank summons forms and Marshal Service Form (Form USM-285) to Simpson so that he may cause the complaint to be served upon defendants.

16. Simpson shall complete and send the Clerk of Courts a separate summons and USM-285 form for each defendant. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.

17. The United States Marshal Service shall serve the completed summonses, together with a copy of the complaint (Docket 1) and this order, upon the defendants.

18. Defendants will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the Defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

19. The clerk of the court is directed to send a copy of this order to the appropriate official at Simpson's institution.

20. Simpson will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Local Rules while this case is pending.

DATED August 27th, 2019.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK